IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BORTEX INDUSTRY COMPANY LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No._____ |
| ) | |
| FIBER OPTIC DESIGNS, INC., ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |
| ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint, Plaintiff Bortex Industry Company Limited ("Bortex"), by and through the undersigned counsel, alleges as follows:

## THE PARTIES

1.      Bortex is a Chinese company with a place of business located at Shaogangtou District, Qiaotou, Dongguan, Guangdong Province, China 523536.

2.      Defendant Fiber Optic Designs, Inc. ("FOD") is a Pennsylvania corporation with, upon information and belief, a principal place of business located at 704 Floral Vale Avenue, Yardley, Pennsylvania 19067.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action because it arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and seeks relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

4.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

5.      Upon information and belief, this Court has personal jurisdiction over Defendant FOD at least by virtue of its presence within this judicial district, its conducting business within this judicial district and its filing a lawsuit in this Court.

6.      Venue is proper under 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND

7.      According to representations by FOD, and reflected in United States Patent and Trademark Office ("USPTO") records or as reflected on the face of the particular patents, FOD is an owner, with purported enforcement rights, of the following United States Patents: (a) U.S. Patent No. 7,220,022, entitled "Jacketed LED Assemblies And Light Strings Containing Same" (the "'022 patent"), attached hereto as Exhibit 1, and (b) U.S. Patent No. 7,934,852, entitled "Jacketed LED Assemblies And Light Strings Containing Same" (the "'852 patent"), attached hereto as Exhibit 2.

8.      The '022 and '852 patents generally relate to molded construction light emitting diode ("LED") light strings.

9.      Sean Shao is the Chairman of Bortex.

10.     Sean Shao created, developed, offered for sale and sold injection molded construction LED light strings beginning during the year 1999.

11.     Sean Shao is listed as the inventor on Chinese Patent No. 03246467.9. A true and correct copy of Chinese Patent No. 03247467.9 is attached hereto as Exh. 3.

12.     Chinese Patent No. 03246467.9 issued June 3, 2003 and describes injection molded light strings.

13.     In 1999, Sean Shao displayed his injection molded construction LED light strings at the Canton Light Show in Guangzhou, China.

14.   David Allen saw Sean Shao's injection molded construction LED light strings at the trade show.

15.   David Allen approached Sean Shao and Sean Shao informed David Allen how to make molded construction LED light strings prior to the filing of the patent applications that led to the '022 and '852 patents.

16.   David Allen met Sean Shao in person and communicated with Sean Shao to learn the methods Sean Shao used to manufacture the injection molded construction LED light strings prior to filing the patent applications that led to the '022 and '852 patents.

17.   FOD received samples of Sean Shao's injection molded construction LED light strings and, FOD's representative, who signed his name "Dave," stated in an e-mail dated, upon information and belief, in May 2002:  "I will be sharing the samples with our CTO, Dr. Mark Allen.  I believe he will approve of the construction technique where you've injection molded the PVC lens directly over the LED lamps and wire connections, forming a perfect, and weathertight seal."  Exh. 4.  Upon information and belief, the person who signed his name "Dave" was David Allen.

18.   David Allen purchased around one million sets of injection molded construction LED light strings from Bortex from June 2002 through 2003.

19.   Sean Shao is not named as an inventor on the patent applications that led to the '022 and '852 patents.

20.   Sean Shao is not named as an inventor on the face of the '022 and '852 patents.

21.   During prosecution of the applications that led to the '022 and '852 patents, published materials regarding the molded construction LED light strings created,

3

developed, offered for sale and sold by Sean Shao more than one year before the filing dates of the patent applications that led to the '022 and '852 patents were not disclosed to the U.S. Patent and Trademark Office.

22.     Upon information and belief, David Allen and his attorneys were aware of information material to the claims of the '022 patent and, with a deceitful intent, chose not to disclose that information the USPTO thereby violating their duty of candor.

23.     The faces of the '022 and '852 patents identify David Allen and Mark Allen as the inventors.

24.     The '022 patent claims priority on the following patent applications, and the inventor(s) associated with each application are next to the application number:

|  |  |
|---|---|
| 10/755,463 | David Allen |
| 10/243,835 | Mark Allen |
| 09/819,736 | Mark Allen |
| 09/378,631 | Mark Allen |
| 09/339,616 | Mark Allen |
| 60/119,804 | Mark Allen |

25.     Approximately five years after filing U.S. Patent Application Serial No. 10/755,463, on or about December 18, 2008, FOD filed a petition to correct inventorship in an attempt to add Mark Allen as an inventor of the application. *See* Exh. 5.

26.     In response to FOD's counsel's e-mail regarding Mark Allen's willingness to sign paperwork that names both David Allen and Mark Allen as co-inventors for U.S. Patent Application Serial No. 10/755,463, Mark Allen sent FOD's counsel an e-mail on December 15, 2008 stating:

> This is spelled out in plain English below.  David Allen has not invented anything and it is illegal for me to sign any form of co-inventors.  YES I STILL REFUSE TO DO ANY SUCH ILLEGAL ACT.  The CORRECT thing to do is to rename all patents as they should be: with me as sole inventor, and also allow me to correct the mistakes in them.  Thanks.
> Dr. Mark R. Allen

*Id.* at Exh. C, p. 4.

27.    The USPTO did not issue a decision on FOD's petition to correct inventorship.

28.    On August 9, 2007, FOD sued New England Pottery, LLC ("NEP") in the U.S. District Court for the District of Colorado for allegedly infringing the '022 patent based on molded construction LED light strings Bortex manufactured and sold to NEP. The case was styled *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, Case No. 1:2007-cv-01683.

29.    On December 23, 2008, NEP filed a Detailed Request for *Inter Partes* Reexamination Under 35 U.S.C. §§ 311-318 And 37 C.F.R. § 1.902 *Et Seq.* (the "Reexamination Request") seeking reexamination of claims 1-25, 27-33, 35-59, 61-67 and 69-70 of the '022 patent.  A copy of the Reexamination Request is attached as Exhibit 6.

30.    The Reexamination Request discussed the priority date of the '022 patent and contended the USPTO "must give the '022 patent a priority date of January 13, 2004 for the Reexamined Claims." *Id.* at 2-3.

31.    The USPTO examined the priority claim of the '022 patent and found:

> . . . the application 10/755,463 only names the inventor David Allen, and does not list Mark Allen, who is listed in all the previous applications. Accordingly, the necessary condition of having a later filed application list the inventor or inventors of a previous filed application was not met at application 10/775,463.  Given these circumstances, the owner of U.S. Patent 7,220,022 does not gain the benefit of priority for applications filed

> prior to the application 10/755,463.  Since the filing date of 10/755,463 is
> January 13, 2004, the earliest effective filing date of U.S. Patent 7,220,022
> becomes January 13, 2004.

Exh. 7 at 4-5.

32.     During the reexamination proceeding, FOD represented to the USPTO "the term 'injection molding' is well known and established in the art."  Exh. 8 at 27.

33.     FOD also submitted a Rule 132 Declaration of Greg Kupler that represented to the USPTO "the term 'injection molding' is well known and established in the art, and indeed in the English language, as 'a method of forming thermoplastic or thermoset plastic, metal, or ceramic material by injection into a closed mold.'  (See Dictionary.com.  Unabridged.  Based on the Random House Dictionary, © Random House, Inc. 2009)."  Exh. 9 at ¶ 4(e).

34.     One of the references cited by the USPTO when rejecting claims being reexamined was U.S. Patent No. 6,416,203 (the "Wong patent").  A true and correct copy of the Wong patent is attached hereto as Exhibit 10.

35.     The Wong patent describes the process Bortex uses to manufacture molded construction LED light strings it sells to customers.

36.     The Abstract of the Wong patent discloses:

> An ornamental light bulb has a pair of electrical wires, a bulb electrically
> connected with the bulb and an enclosure securely formed outside of the
> connected bulb and the electrical wires. The enclosure is formed by
> molding or injection molding, such that the components inside the
> enclosure are protected and the entire bulb structure is waterproof.

*Id.*

37.     The Field of the Invention of the Wong patent states:  "The invention provides an ornamental light bulb having an injection molded closure securely enclosing the bulb and the electrical wires to overcome the aforementioned problems."  *Id.*

38.     The Wong patent's Summary of the Invention recites:   "The main objection of the present invention is to provide an ornamental light bulb that can be assembled without manual labor.  The light bulb has an injection molded enclosure securely enclosing the bulb and the electrical wires to eliminate the need for manual assembly."  *Id.*

39.     The Wong patent describes various embodiments of the structure of an ornamental light bulb:

> The present invention relates to an ornamental light bulb.  As shown in FIGS. 1 and 2, the ornamental light bulb in accordance with the invention has a pair of electrical wires (10), a bulb (20) and an enclosure (30).  The bulb (20) is electrically connected to the distal ends of the electrical wires (10).  The enclosure (30) is integrally formed outside of the attached bulb (20) and the electrical wires (10).
>
> The connection between the electrical wires (10) and the bulb (20) is conventional. Therefore, a detailed description of the connection is not provided.
>
> After the connection between the electrical wires (10) and the bulb (20), the bulb (20) and the attached electrical wires (10) are inserted into a mold (not shown) full of liquid polyvinyl chloride (PVC).  When the PVC in the mold cures and is shaped, the bulb (20) together with a portion of the electrical wires (10) are securely enclosed by a transparent of PVC enclosure (30).  Because the enclosure (30) is molded or injection molded, the components inside the enclosure (30) are sealed, such that not only are the components inside the enclosure (30) protected, but the entire assembly is waterproof.
>
> As shown in FIGS. 3 and 4, another preferred embodiment of the ornamental light bulb in accordance with the invention has a pair of electrical wires (10), a bulb (20), a wire guide (30), a protective tube (40) and an enclosure (50).  The bulb (20) is electrically connected to the distal ends of each of the electrical wires (10). The wire guide (30) is securely mounted between the electrical wires (10) to hold the wires (10) and prevent a short between the wires (10).  The protective tube (40) surrounds the outside of the assembled electrical wires (10), the bulb (20) and the wire guide (30).  The enclosure (50) is integrally formed outside of the attached bulb (20) and the electrical wires (10).
>
> Again, the connection between the electrical wires (10) and the bulb (20) is conventional. Therefore, a detailed description is not provided.
>
> When the connection between the bulb (20) and the electrical wires (10) is finished, the wire guide (30) is then inserted between the two

electrical wires (10) such that a short between the electrical wires (10) is
avoided.  After the assembly of the electrical wires (10), the bulb (20) and
the wire guide (30), the protective tube (40) is placed around the assembly
and is heated to surround and secure the assembly.   Thereafter, the bulb
(20) with the electrical wires (10) as well as the wire guide (30) and the
film (40) is inserted into a mold (not shown) full of liquid polyvinyl
chloride (PVC).  When the PVC in the mold cures and is shaped, the bulb
(20), a portion of the electrical wires (10) together with the wire guide (30)
and the film (40) are entirely and securely enclosed by a layer of
transparent PVC enclosure (50).  Because the enclosure (50) is molded or
injection molded, the components inside the enclosure (50) are sealed,
such that not only are the components inside the enclosure (50) protected,
but the entire assembly is waterproof.

*Id.*

40.     As seen from the block quote above, one of the embodiments disclosed in
the Wong patent has an injection molded enclosure (30) which seals and protects the
components inside the enclosure (30) and the entire assembly is waterproof.

41.     Also as seen from the block quote above, another of the embodiments
disclosed in the Wong patent has an injection molded enclosure (50) which seals and
protects the components inside the enclosure (50) and the entire assembly is waterproof.

42.     Claim 1 of the Wong patent recites:

An ornamental light bulb comprising
two electrical wires (10);
a bulb (20) electrically connected to distal ends of the electrical
wires (10);
a wire guide (30) securely inserted between the electrical wires
(10);
a protective tube (40) securely surrounding the outside of the
assembled two electrical wires (10), the bulb (20) and the wire guide (30);
and
an enclosure (50) formed by injection molding and entirely and
securely formed outside of the connected bulb (20), the electrical wires
(10), the wire guide (30) and the protective tube (40).

*Id.*

8

43. The only technique found in claim 1 of the Wong patent for forming the enclosure is "injection molding."

44. The Wong patent uses the phrase "injection molding" or "injection molded" six times. *Id.*

45. FOD represented to the USPTO that "Wong does not teach or otherwise discuss injection molding." Exh. 11 at 10.

46. FOD represented to the USPTO that "Wong never uses any conventional term that one of ordinary skill would understand as referring to injection molding." Exh. 8 at 35; Exh. 11 at 10.

47. FOD represented to the USPTO that "Wong does not teach or otherwise discuss an injection molding technique." Exh. 8 at 35, 42; Exh. 11 at 12.

48. FOD represented to the USPTO that "Wong clearly describes a casting process to make the enclosure and does not expressly or otherwise disclose the injection molding process." Exh. 12 at 11.

49. FOD also made the following representation to the USPTO:

Wong does, however, state in various places that "the light bulb has an injection molded enclosure securely enclosing the bulb and the electrical wires to eliminate the need for manual assembly." These references to injection molding appear to be simply inaccurate and improper use of the term "injection molding". Those skilled in the art would readily understand that Wong is only discussing a casting (dipping) technique and does not describe injection molding in any form. Perhaps more importantly, the injection molding could not be used to fabricate either the structure illustrated in Figs. 1-2, or the structure illustrated in Figs. 3-5 of Wong."

*Id.*

50. FOD represented to the USPTO that "Wong does not describe or enable injection molding the enclosure 30/50." Exh. 8 at 34.

9

51.     In addition, FOD made the following representation to the USPTO:

> Wong does, however, state in various places that "the light bulb has an injection molded enclosure securely enclosing the bulb and the electrical wires to eliminate the need for manual assembly." *See Wong Col. 1, line 43.* Wong also states that "because the enclosure (30) [50] is molded or injection molded, the components inside the enclosure (30) [50] are sealed, such that not only are the components inside the enclosure protected, but the entire assembly is waterproof." *See Wong, Col. 2, lines 24-28 and 59-62.* These references to injection molding appear to be simply inaccurate and improper use of the term "injection molding". Those skilled in the art would readily understand that Wong is only discussing a casting (dipping) technique and does not describe injection molding in any form. Perhaps more importantly, the injection molding could not be used to fabricate either the structure illustrated in Figs. 1-2, or the structure illustrated in Figs. 3-5 of Wong.

Exh. 8 at 35-36.

52.     FOD represented to the USPTO that "Wong does not describe or enable injection molding the enclosure 30/50." Exh. 8 at 34, 43, 49.

53.     The examiner at the USPTO adopted FOD's representations regarding the Wong patent. *See* Exh. 13 at 14; Exh. 14.

54.     The examiner at the USPTO believed FOD's representation that the Wong patent only discloses a casting process. *See* Exh. 13 at 16.

55.     NEP appealed the examiner's not rejecting the reexamined claims.

56.     NEP withdrew its appeal on May 7, 2012, before the Board of Patent Appeals and Interferences ruled on the appeal, because it settled the lawsuit brought by FOD.

57.     On December 16, 2011, FOD sued Seasons 4, Inc. in this Court for allegedly infringing the '022 and '852 patents based on molded construction LED light strings Bortex manufactures and sells to Seasons 4, Inc. The case was styled *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, Case No. 2:11-cv-7695-MSG.

58.     FOD and NEP settled their case in or around May 2012 without Bortex being involved in the settlement discussions and, upon information and belief, as a result of the settlement, NEP currently is not permitted to use Bortex as a manufacturer to make molded construction LED light strings for it.

59.     FOD has contacted other of Bortex's customers asserting that molded construction LED light strings manufactured for them by Bortex infringe FOD's patents.

60.     Bortex's customers, including FOD and NEP, have sought indemnity and defense from Bortex relating to FOD's lawsuits and allegations.

61.     Bortex also faces potentially new demands from additional customers who will be sued in the future by FOD.

62.     There is an actual controversy between Bortex and FOD regarding whether Bortex's customers infringe the '022 and '852 patents by purchasing and selling molded construction LED light strings from Bortex, and whether the '022 and '852 patents are valid and enforceable.

## COUNT I
## DECLARATORY JUDGMENT OF INVALIDITY OF
## U.S. PATENT NO. 7,220,022

63.     Bortex repeats and realleges the allegations of paragraphs 1 through 62 as if fully set forth herein.

64.     The '022 patent is invalid for failure to comply with the requirements of Title 35of the United States Code, including, without limitation, one or more of §§ 101, 102, 103 and112.

65.     The '022 patent is invalid because, among other things, there is prior art, not considered by the U.S. Patent and Trademark Office in issuing the patent, that anticipates the claims.

11

66.     Bortex seeks and is entitled to a declaratory judgment that all claims in the '022 patent are invalid.

## COUNT II
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF
## U.S. PATENT NO. 7,220,022

67.     Bortex repeats and realleges the allegations of paragraphs 1 through 66 as if fully set forth herein.

68.     The '022 patent is unenforceable because, among other things, FOD committed inequitable conduct during prosecution of the patent.

69.     Upon information and belief, the failure of David Allen and his attorneys to cite materials and information obtained from Sean Shao to the USPTO during prosecution of the '022 patent and name Sean Shao as the inventor was done with deceptive intent.

70.     Upon information and belief, the molded construction LED light strings sold by Sean Shao is highly material to the patentability of the '022 patent and David Allen and his attorneys failed to disclose information pertaining to Sean Shao's molded construction LED light strings with an intent to deceive the USPTO.

71.     Upon information and belief, there is a substantial likelihood that a reasonable patent examiner would not have allowed the '022 patent had the patent examiner known about the information the applicant failed to disclose.

72.     Upon information and belief, FOD made materially false and misleading statements with an intent to deceive the USPTO during the reexamination proceeding regarding the '022 patent.

73.     Bortex seeks and is entitled to a declaratory judgment that the '022 patent in unenforceable.

**COUNT III**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF**
**U.S. PATENT NO. 7,220,022**

74.    Bortex repeats and realleges the allegations of paragraphs 1 through 73 as if fully set forth herein.

75.    Bortex provides molded construction LED light strings to customers.

76.    FOD has asserted that customers of Bortex's molded construction LED light strings who sell the light strings infringe the '022 patent.

77.    Such customers do not infringe any valid claim of the '022 Patent

78.    Bortex seeks and is entitled to a declaratory judgment that Bortex's customers who purchase and sell molded construction LED light strings obtained from Bortex do not infringe any valid, enforceable claim of the '022 patent.

**COUNT IV**
**DECLARATORY JUDGMENT OF INVALIDITY OF**
**U.S. PATENT NO. 7,934,852**

79.    Bortex repeats and realleges the allegations of paragraphs 1 through 78 as if fully set forth herein.

80.    The '852 patent is invalid for failure to comply with the requirements of Title 35of the United States Code, including, without limitation, one or more of §§ 101, 102, 103 and112.

81.    The '852 patent is invalid because, among other things, there is prior art, not considered by the U.S. Patent and Trademark Office in issuing the patent, that anticipates the claims.

82.    The judicially-created doctrine of obviousness-type double patenting prohibits an inventor from obtaining a second patent for claims that are not patentably

distinct from the claims of a first patent – any such patent is rendered invalid.  The '852 patent is invalid under the doctrine of obvious-type double patenting.

83.     Bortex seeks and is entitled to a declaratory judgment that all claims in the '852 patent are invalid.

## COUNT V
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF
## U.S. PATENT NO. 7,934,852

84.     Bortex repeats and realleges the allegations of paragraphs 1 through 83 as if fully set forth herein.

85.     The '852 patent is unenforceable because, among other things, FOD committed inequitable conduct during prosecution of the patent.

86.     Upon information and belief, the failure of David Allen and his attorneys to cite materials and information obtained from Sean Shao to the USPTO during prosecution of the '852 patent and name Sean Shao as the inventor was done with deceptive intent.

87.     Upon information and belief, the molded construction LED light strings sold by Sean Shao is highly material to the patentability of the '852 patent and David Allen and his attorneys failed to disclose information pertaining to Sean Shao's molded construction LED light strings with an intent to deceive the USPTO.

88.     Upon information and belief, there is a substantial likelihood that a reasonable patent examiner would not have allowed the '852 patent had the patent examiner known about the information the applicant failed to disclose.

89.     Upon information and belief, FOD made materially false and misleading statements with an intent to deceive the USPTO during the reexamination proceeding regarding the '852 patent.

14

90.     Bortex seeks and is entitled to a declaratory judgment that the '852 patent in unenforceable.

**COUNT VI**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF**
**U.S. PATENT NO. 7,934,852**

91.     Bortex repeats and realleges the allegations of paragraphs 1 through 90 as if fully set forth herein.

92.     Bortex provides molded construction LED light strings to customers.

93.     FOD has asserted that customers of Bortex's molded construction LED light strings who sell the light strings infringe the '852 patent.

94.     Such customers do not infringe any valid claim of the '852 Patent

95.     Bortex seeks and is entitled to a declaratory judgment that Bortex's customers who purchase and sell molded construction LED light strings obtained from Bortex do not infringe any valid, enforceable claim of the '852 patent.

**JURY DEMAND**

Bortex hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Bortex requests that this Court enter judgment against FOD as follows:

A.     A declaration that the '022 and '852 patents and each of the claims therein are invalid;

B.     A declaration that the '022 and '852 patents and each of the claims therein are unenforceable;

15

C.     A declaration that Bortex's molded construction LED light strings and customers that sell molded construction LED light strings manufactured by Bortex do not infringe any valid, enforceable claim of the '022 and '852 patents;

D.     A preliminary and permanent injunction precluding FOD, its officers directors, employees, agents and all other persons acting in concert or participation with them from suing for infringement or otherwise asserting infringement of the '022 and/or '852 patents against Bortex and customers that purchased molded construction LED light strings manufactured by Bortex;

E.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Bortex's reasonable attorneys' fees; and

F.     An award to Bortex of such further relief at law or in equity as the Court deems just and proper

Dated:  July 25, 2012                     STAMOULIS & WEINBLATT LLC

*Richard C. Weinblatt*
_____
Richard C. Weinblatt #5080
            weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

*Attorneys for Plaintiff*
*Bortex Industry Company Limited*

16