**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BORTEX INDUSTRY COMPANY** | : | |
| **LIMITED,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  12-4228** |
| | : | |
| **FIBER OPTIC DESIGNS, INC.,** | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                          **December 2, 2013**

## MEMORANDUM OPINION

This case involves a patent dispute regarding jacketed light emitting diode ("LED") assemblies and light strings.  Plaintiff/Counter-defendant, Bortex Industry Company Limited ("Bortex") brought this declaratory action against Defendant/Counter-claimant, Fiber Optic Designs, Inc. ("FOD"), asserting that two of FOD's patents, U.S. Patent Numbers 7,220,022 ("the '022 patent") and 7,934,852 ("the '852 patent"), are invalid, unenforceable and not infringed by Bortex's products.  FOD filed a counterclaim for patent infringement, as well as a motion for preliminary injunction.

Over the course of discovery on FOD's motion for preliminary injunction, the parties routinely required court intervention in resolving disputes centered on Bortex's failure to produce discoverable materials.  As detailed *infra*, most of the discoverable materials at issue pertain to an *inter partes* reexamination of the '022 patent that was conducted by the United States Patent and Trademark Office ("PTO") beginning in 2008.

1

On June 12, 2013, a date originally set for a <u>Markman</u> hearing, we addressed FOD's motion for sanctions, wherein substantial evidence of Bortex's failure to turn over requested discovery was presented and where FOD urged that case dispositive motions were appropriate.

After a careful review of the discovery history in this case, and for the reasons set forth below, FOD's motion for sanctions will be granted.  Because the discovery violations at issue were so flagrant and done in bad faith, we will grant the motion for sanctions and strike Bortex's pleadings, including its affirmative defenses to infringement, and enter judgment in favor of FOD.

### I.   **FACTUAL AND PROCEDURAL BACKGROUND**

#### A.  **Factual History**

Bortex is a Chinese company with a place of business in the Guangdong Province of China.  Bortex's complaint alleges that in 1999, Sean Shao, the Chairman of Bortex, developed and sold injection-molded-construction LED light strings.[1]  According to Bortex, David Allen, President of FOD, saw these light strings on display during the 1999 Canton Light Show in Guangzhou, China.  Bortex alleges that over the next three years, David Allen purchased a number of light strings from Shao, and also corresponded with Shao in an effort to learn the techniques he employed in creating the injection-molded LED light strings.  Bortex claims that when FOD filed for patents on these designs, David Allen, and his brother, Mark Allen, were incorrectly listed as inventors instead of Sean Shao.  (Compl. ¶¶ 1, 9-10, 13-23.)

---

[1] The light strings at issue have been described as ornamental LED Christmas lights.  The lights are marketed as particularly well-suited for outdoor display, as the injection-molding process is said to prevent moisture and other substances from invading the circuitry, thus preventing corrosion.  (David Allen Testimony, June 12, 2013 Hrg. Tr., pp. 87-89.)

Bortex notes that once FOD obtained the '022 and '852 patents, FOD began filing suit against numerous Bortex customers for patent infringement, including litigation brought in 2007 against New England Pottery, LLC ("NEP") in the United States District Court for the District of Colorado ("the Colorado litigation").[2]   Bortex's complaint explains that NEP and other Bortex customers have sought indemnity and defense from Bortex in these lawsuits.  (Compl. ¶¶ 28, 60-61.)

Bortex initiated the present action on July 25, 2012, seeking a declaratory judgment that FOD's '022 and '852 patents for jacketed LED light strings are invalid and unenforceable, and that Bortex's products do not infringe these patents.  In response, FOD filed a counterclaim, asserting that Bortex has continuously sold products that infringe upon the '022 and '852 patents. On October 12, 2012, FOD filed a motion for preliminary injunction,[3] seeking to prevent Bortex from exporting from China to the United States any products that infringe upon claims 1, 18 and 69 of the '022 patent.

In support of its motion for preliminary injunction, FOD argues that it has a significant likelihood of success on the merits because the '022 patent has already survived ex parte and inter partes reexamination proceedings before the PTO.[4]   FOD explains that NEP, a former Bortex customer, filed a request with the PTO for inter partes reexamination of the '022 patent in 2008.  (Id., Sub. Mot. For Prelim. Inj., Wenz Decl., ¶ 4.)  NEP was listed as the real party in

---

[2] Another patent infringement action brought by FOD against a Bortex customer is currently pending in this Court.  (See Fiber Optic Designs, Inc. v. Seasons 4, Inc., Dkt. No. 11-7695.)  The Seasons 4 litigation has been stayed pending the resolution of the instant case.

[3] A substitute motion for preliminary injunction was filed on May 24, 2013.

[4] Inter partes review is a means by which a non-owner of a patent can challenge its patentability with the PTO.  A petitioner may request to cancel as unpatentable claims of a patent based on prior art.  35 U.S.C. § 311.

interest in the application for reexamination; however, FOD has asserted throughout this litigation that Bortex participated in the reexamination and indemnified NEP for its costs.  (See, e.g., Wenz Decl., ¶ 5 ("Pursuant to an indemnity agreement, Bortex reimbursed NEP for fees and costs incurred in the Colorado suit and reexamination proceedings").)

FOD presses this point because under 35 U.S.C. § 315(c) (pre-AIA), a real party in interest to an inter partes reexamination proceeding is estopped from later attacking, in any civil action, the validity of any claim determined to be patentable on any ground which that third party raised or could have raised during the reexamination.  See Belkin Intern., Inc. v. Kappos, 696 F.3d 1379, 1385 (Fed. Cir. 2012).  "To be required to be named as a real party in interest, a party must participate in some manner in the request for reexamination."  In re Slominski, Reexamination Control No. 95/001,852 (Jan. 23, 2013).  FOD urges that Bortex participated in the reexamination proceedings brought by NEP, and as a real party in interest, is estopped from raising numerous invalidity arguments regarding the '022 patent.

**B.  Procedural History - Discovery**

A review of the discovery history in this case reflects that what should have been a straightforward, expedited exchange of information was anything but that.  Given the severity of the sanctions sought, we take the time here to review the discovery process.

FOD served its first set of interrogatories and document requests on September 27, 2012.  After holding a telephone conference to discuss the parties' discovery needs leading up to a preliminary injunction hearing, we entered an Order on January 14, 2013, setting forth an expedited discovery schedule.  The parties were directed to supplement responses to any outstanding written discovery, and given just over one month to complete all fact and expert

discovery relating to FOD's motion for preliminary injunction.  (Doc. No. 36.)  On February 1, 2013, we received correspondence from FOD stating that Bortex had failed to supplement discovery responses and that the parties were having difficulties scheduling depositions.  We placed a stay on the prior discovery Order and scheduled a discovery status hearing for March 5, 2013.  (Doc. Nos. 38, 39.)

During the March 5, 2013 status hearing, FOD provided the Court with copies of its propounded interrogatories and document requests, as well as Bortex's responses, which largely consisted of boilerplate objections followed by this statement: "In accordance with Federal Rule of Civil Procedure 33(d) and to the extent such documents exist and can be located after a reasonable search, Bortex will produce non-privileged, responsive documents from which requested information can be derived."  After we reminded counsel for Bortex that discovery was to be expedited and expressed concern that Bortex had not complied with our January 14, 2013 Order to supplement discovery responses, counsel explained that his client had failed to fully respond to the propounded interrogatories because the parties could not agree on the appropriate timeline for exchanging contention interrogatories.[5]  (Mar. 5, 2013 Hrg. Tr., pp. 8-11.)  When we pointed out that the January 14, 2013 Order was not conditioned upon the exchange of contention interrogatories, Bortex's counsel assured the Court that given the nature of the preliminary injunction hearing, Bortex was "not going to hold anything back."  (Id. at pp. 11-12.)

---

[5] Contention interrogatories help to "discover facts supporting the theories of the parties" and may help to "narrow and sharpen the issues" for trial.  Woods v. DeAngelo Marine Exhaust, Inc., 692 F.3d 1272, 1280 (Fed. Cir. 2012).  Courts have considerable discretion in allowing delayed responses to contention interrogatories.  Id.; see also FED. R. CIV. P. 33(a)(2).

In addition to providing inadequate responses to FOD's interrogatories, Bortex had also withheld numerous documents that would otherwise be responsive to FOD's requests for production.  Although Bortex had turned over [many] documents in response to the requests for production, Bortex's counsel acknowledged that his client had unilaterally withheld a significant number of documents because the parties had not agreed upon a confidentiality agreement.  (Id. at pp. 6, 13.)  FOD responded that Bortex's confidentiality agreement argument was a "red herring" because Bortex had also refused to produce non-confidential, publicly-available information on additional Bortex products that may infringe upon the '022 patent.  Counsel for FOD added that Bortex was also refusing to turn over sales information, which was necessary for FOD to establish irreparable harm.  Counsel for FOD urged that Bortex was "picking and choosing" the documents it felt were relevant to the preliminary injunction hearing.  (Id. at pp. 16-28.)

We agreed with FOD, and on March 7, 2013, specifically ordered the following:

> To the extent that either the interrogatories or requests for production propounded by FOD seeks information regarding products or patents that are not listed in FOD's motion for preliminary injunction, Bortex shall provide FOD with all publicly-available, responsive information. . . . Bortex shall also provide FOD with all pertinent sales information requested in FOD's interrogatories or requests for production.

(Doc. No. 42.)  At the conclusion of the March 5, 2013 hearing, we also ordered that all remaining outstanding discovery pertinent to the motion for preliminary injunction was to be completed by May 6, 2013, which provided the parties with approximately sixty additional days.  More specifically, the parties were ordered to complete all written discovery within the first thirty days, with the following thirty days to be devoted to completing all depositions required for the preliminary injunction hearing.  A status hearing was scheduled for April 4, 2013 to

6

assess the parties' progress.  (Id.)  Given the continuing delays, we warned that if the parties did

not comply with the discovery schedule, preclusion-type sanctions would be considered.  (Mar.

5, 2013 Hrg. Tr., p. 40.)

At the April 4, 2013 status hearing, counsel for FOD advised that Bortex had responded

to written discovery the prior evening, and that most responses simply incorporated Bortex's

expert report prepared by a Dr. Roger D. Corneliussen.  (Apr. 4, 2013 Hrg. Tr., p. 2; Sub. Mot.

for Prelim. Inj., Doc. No. 58, Berenato Decl., Ex. 1.)  Counsel for FOD advised that he had not

had sufficient time to review the report and determine whether it was responsive to FOD's

propounded interrogatories.  (Apr. 4, 2013 Hrg. Tr., p. 11.)  Given the eleventh-hour production

by Bortex, we instructed counsel for FOD to review Dr. Corneliussen's report, and advised that

if FOD still felt that the answers were not compliant, FOD should contact the Court.  We again

stressed that discovery response deficiencies or continued failure to comply with discovery

Orders could result in sanctions.   (Id. at p. 15.)

On April 9, 2013, we received correspondence from counsel for FOD stating that a

number of Bortex's discovery responses were still deficient.  (Doc. No. 61-1.)  Counsel for FOD

specifically noted that Bortex's deficient responses to document requests and requests for

admission often related to the issue of Bortex's relationship with NEP.  FOD was understandably

attempting to obtain information about this business relationship, given NEP's request for

reexamination of FOD's '022 patent.  (Id. at p. 6.)  FOD's April 9, 2013 correspondence stated

that "Bortex has produced few if any documents relating to NEP, communications between it

and NEP, or its relationship with NEP.  Further . . . Bortex denies having indemnified NEP for

its lawsuit against FOD or the reexamination requests NEP filed against the '022 patent in the [PTO]." (Id.)

A telephone conference was held on May 23, 2013 to address FOD's complaints about Bortex's discovery responses regarding NEP. During the call, counsel for Bortex argued that the information sought by FOD was not relevant to the motion for preliminary injunction. Due to the estoppel principles outlined in 35 U.S.C. § 315(c), we disagreed and issued yet another discovery Order instructing Bortex to "provide FOD with any and all documents in its possession, custody or control relating to NEP's reexamination of the '022 patent, as well as any documents that reference or discuss indemnification made to NEP related to the reexamination" on or before June 10, 2013. (Doc. No. 61, p. 3.) This Order should have been unnecessary because, back in January of 2013, five months prior to our directive, FOD had properly requested this information through written discovery.

Counsel for Bortex responded to the Court's Order via an email dated May 31, 2013, which stated:

> [A]fter a reasonable search, there are no documents in Bortex's possession related to the NEP re-exam issue. Bortex did not control or participate in the re-exam instituted by NEP and was not copied on any documents related to the re-exam. In order to confirm that Bortex's search related to this issue was thorough, I contacted NEP's re-exam counsel in mid-April 2013.
>
> In a conversation, James J. Foster of Wolf Greenfield[6] confirmed:
>
> 1. Wolf Greenfield did not violate 37 C.F.R. §§ 1.915(b)(8) and 41.67(c)(1)(i) by failing to disclose a real party in interest during the re-exam
> 2. Bortex was NOT a real party in interest during the re-exam
> 3. Wolf Greenfield did not have an attorney-client relationship with Bortex regarding the re-exam

---

[6] Wolf, Greenfield & Sacks, P.C. is the law firm hired by NEP to conduct the reexamination of the '022 patent and defend the patent infringement lawsuit brought by FOD.

    4.   Bortex did not control or make any decisions regarding the re-exam

    5.   Bortex did not pay NEP's costs related to the re-exam

In addition, <u>Bortex did not have any communications with NEP regarding the re-exam or indemnification.</u>  As Mr. Shao, Bortex's chairman testified, Bortex had an oral understanding with [Bethlehem Lighting ("GKI")] (which was later bought by NEP) that it would indemnify GKI for any costs related to any patent infringement allegations.  Bortex ultimately did not indemnify GKI or NEP.  GKI did, however, refuse to pay numerous outstanding Bortex invoices.  Bortex did not pursue its claim for payment of these invoices against GKI, and GKI did not pursue its claim for indemnification against Bortex.

Thus, all documents relating to this issue have already been produced.  FOD is free to subpoena NEP, GKI and Wolf Greenfield to confirm all of the above.

(Mot. for Sanctions, Ex. 5 (emphasis added).)  Although this email contains numerous details, its import is clear and direct: Bortex had no discoverable information in its possession because Bortex was not involved in the reexamination instituted by NEP, nor did it have any written communications with NEP regarding the reexamination.

On June 11, 2013, FOD filed the motion for sanctions at issue, pursuant to Federal Rule of Civil Procedure 37, asserting that upon further investigating Bortex's relationship with NEP, it discovered the following: (1) emails between Bortex and GKI, a wholly-owned division of NEP; (2) legal invoices made out to NEP that were sent to Bortex for reimbursement for work performed in both the Colorado litigation and the reexamination of the '022 patent; and (3) the Rule 30(b)(6) deposition of NEP from the Colorado litigation, in which the witness testified that NEP's legal bills associated with that litigation were being reimbursed by Bortex.  (<u>Id.</u> at pp. 1-2, Exs. 6-7.)  FOD further referenced and attached a legal invoice between Wolf Greenfield and NEP regarding services rendered during the reexamination of the '022 patent, which included an entry for reviewing a filing and corresponding with both NEP and Bortex.  (<u>Id.</u> at Ex. 6, pp. 11-12.)  FOD noted that none of these documents had been turned over by Bortex throughout the

course of discovery.  (Id. at Ex. 1, ¶¶ 77-83.)  FOD also argued that these documents directly contradicted some of Bortex's responses to FOD's requests for admission, which had denied any involvement in the NEP reexamination.[7]  (Id. at Ex. 2, ¶¶ 9, 8 (second occurrence).)

FOD also stressed that Shao falsely testified during his deposition conducted on April 19, 2013, wherein he stated that: (1) he had never heard of NEP; (2) Bortex never conducted business with NEP; (3) he was unaware of the '022 patent until the Seasons 4 litigation began in 2011; (4) he was unaware of the Colorado litigation; (5) Bortex had never reimbursed either NEP or GKI for legal expenses; and (6) the indemnification agreement between Bortex and GKI was never utilized because the case settled prior to any finding of infringement of the '022 patent. (Id. at 2; Shao Dep., Doc. No. 69, Ex. 4, pp. 31, 33, 35-40, 42.)  To illustrate Shao's false testimony, FOD attached to its sanctions motion an email relating to the reimbursement of NEP/GKI's legal bills for the '022 patent reexamination, on which Shao had been copied.  (Mot.

---

[7] The requests for admission called into question are as follows:

> No. 9: "You indemnified, reimbursed, or otherwise paid some or all of the attorneys' fees and costs incurred by New England Pottery, LLC in connection with Fiber Optic Designs, Inc. v. New England Pottery, LLC, Civil Case No. 07-cv-01683-REB-CBS.

> Response: Denied[.]"

> No. 8 (second occurrence): "You indemnified, reimbursed, or otherwise paid some or all of the attorneys' fees and costs incurred by New England Pottery, LLC in connection with the reexamination of U.S. Patent No. 7,220,022.

> Response: Denied[.]"

(Id. at Ex. 2.)

for Sanctions, Ex. 6, p. 3.)[8]  The email, sent by Nash Rittman, a Bortex employee, on May 24,

2010 states:

> Per our conversation and further confirmation with Sean [Shao], Bortex will allow
> for the deduction of the $40,189.73 in legal bills from the 30% deposit for
> pending GKI orders.[9]   As in the past, please send through (with copy to all
> recipients on this email) the legal fee breakdown from Wolf Greenfield. . . . At
> that point in time, Bortex expects that this issue will be concluded.  It is requested
> that upon conclusion of this legal case, Bortex shall be presented with all pertinent
> information, including but not limited to disclosures and discoveries, revealed
> during the process of this legal dispute.  <u>As Bortex will have paid for the legal
> fees in this case</u>, this information shall support Bortex's case in the event such
> issue is raised in a separate forum.

(<u>Id.</u> (emphasis added).)  Other emails, as well as attached invoices, sent between Bortex and GKI

on the same day, May 24, 2010, show that the majority of the legal bills to which Nash Rittman's

email referred were devoted to the reexamination, with the remainder relating to the Colorado

litigation.  (<u>See Id.</u> at Ex. 6, pp. 1-3, 11-17.)

      Although June 12, 2013 had originally been scheduled for the purposes of a <u>Markman</u>

hearing and thereafter to finally commence a hearing on FOD's motion for preliminary

injunction, given FOD's motion for sanctions and the confounding inconsistencies between

Bortex's discovery positions and the information presented in the motion, we chose to first

address FOD's motion for sanctions.  Despite an email from his client's employee which plainly

---

[8] While it is undisputed that Shao does not speak English, some of the emails presented to the
Court that were sent between NEP/GKI and Bortex were translated from English to Chinese.
(<u>See</u> <u>e.g.</u>, Resp. to Mot. for Sanctions, Stamoulis Decl., Ex. 9 (email from Nash Rittman to
Bortex employee requesting translation of email into Chinese so that Sean Shao can confirm his
agreement to the legal fee arrangement).)  A translator was also present for Shao's April 19,
2013 deposition.

[9] The parties agree that when NEP initiated the reexamination proceedings before the PTO, NEP
owned GKI.  FOD asserts that NEP purchased GKI in 1999.  While Bortex would not agree to a
specific year in which NEP obtained GKI, Bortex agreed that this transaction had occurred prior
to the reexamination of the '022 patent.  (<u>See</u> June 12, 2013 Hrg. Tr., pp. 11-12, 17-18.)

stated that Bortex paid GKI's legal bills for both the reexamination and the Colorado litigation, counsel for Bortex took the position that the responses to FOD's discovery requests were not deficient.   Specifically,  with  regard  to  FOD's  requests  for  production,  counsel  for  Bortex represented that all communications between Bortex and GKI related to indemnification and the reexamination had all been oral communications, and thus there were no documents to produce. (June 12, 2013 Hrg. Tr., p. 28.)  Counsel further asserted that the requests for admission were not deficient because Bortex had never directly paid GKI or NEP's legal fees, but instead allowed a deduction from outstanding product invoices.

Counsel for Bortex also urged that FOD's discovery requests only made reference to NEP, not GKI, and that because the entities are not identical, the responses were not deficient. (June 12, 2013 Hrg. Tr., pp. 19-26.)  Counsel pressed this argument despite the fact that FOD's requests for production of documents clearly included GKI, as such requests defined NEP to include "any of its parents, subsidiaries, divisions, departments, and other organization or operating units . . . [and] all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with New England Pottery, LLC."  (Mot. for Sanctions, Ex. 1, ¶ 19.)  The Court confronted counsel for Bortex with this definition, reminding him that he had admitted earlier in that same hearing that NEP owned GKI at the time of the reexamination.  (June 12, 2013 Hrg. Tr., pp. 27-28.)  Unable to deny these facts, counsel for Bortex back tracked, responding, "[W]e don't have anything. . . . It was all done orally to Bortex."  (June 12, 2013 Hrg. Tr., p. 28.)

Regarding the email between Nash Rittman and GKI representatives, counsel for Bortex asserted that Rittman was an independent contractor who was responsible for working out the

legal fee arrangement with GKI, and that Bortex was unaware that he would have discoverable information because FOD had not named him as a potential witness.  (Id. at pp. 30, 40-41.)

Ultimately, we held that Bortex had financed the reexamination of the '022 patent, and that Bortex had engaged in sanctionable conduct by willfully withholding documents and information relating to the reexamination in violation of Court Orders.  (Id. at 44, 74-75, 77.)  At the end of the hearing, we ordered the parties to conduct additional limited discovery on the issue of whether Bortex controlled the reexamination of the '022 patent.

On June 18, 2013, FOD sent correspondence to the Court, attaching numerous additional documents that it argued Bortex had been obligated to turn over during the course of discovery, and which rebutted many of Bortex's assertions from the June 12, 2013 hearing.  (Doc. No. 78.) This correspondence included numerous emails between Sean Shao and Wolf Greenfield clearly reflecting that Wolf Greenfield systematically kept Bortex apprised of the reexamination of the '022 patent, and further demonstrating that, contrary to his deposition testimony, Shao was fully aware of the reexamination and legal fee payment arrangement.  For example, an email between Shao and an attorney at Wolf Greenfield sent on February 23, 2011 states:

> Subject: Re: Reexamination of FOD Patent . . .
>
> This is Sean, the owner of Bortex Industrial Co., Ltd.
> 1. Nash [Rittman] has left Bortex already, so please contact me directly and copy [email address] from now on.
> 2. The payment term of lawsuit fee will be the same as before.
> 3. Any update about the patent issue, please forward to me at your earliest convenience.
> Thanks,
> Sean Shao

(Doc. No. 78, Ex. A, pp. 1-2; see also Id. at Ex. C, p. 4 (email from attorney at Wolf Greenfield to Shao explaining the latest developments before the PTO regarding the '022 patent

reexamination, stating that the PTO "adopted <u>our</u> arguments almost entirely," and promising to continue to give regular updates (emphasis added).)

Other emails unearthed by FOD reflected that Bortex hired Wolf Greenfield to write a letter explaining the reexamination of the '022 patent to Bortex's Canadian customers, and had thus potentially created an attorney-client relationship with Wolf Greenfield.  For example, an email dated March 18, 2011 from an attorney from Wolf Greenfield, on which Shao was copied, stated as follows:

> We just filed our comments explaining why the USPTO should maintain its rejection of all the relevant claims in the '022 patent.  A copy of our submission to the USPTO is attached.  It will be several months before the USPTO issues another office action with its position on the patentability of those claims.  We will let you know as soon as we hear anything.

> As for the Bortex letter, we can certainly provide you with a revised version.  However, I just want to make sure I am clear on your request.  Are you instructing us to provide you with a revised letter to Bortex's Canadian customers that accounts for the recent developments in the reexamination?

> Wire instructions for the payment are attached.

(Doc. No. 78, Ex. B, p. 1.)

In light of these documents, which in our view clearly reflect Bortex's full involvement in the reexamination of the '022 patent, FOD requested an emergency hearing and a number of sanctions.  These requests included a finding that Bortex controlled the reexamination of the '022 patent, the entry of a preliminary injunction, striking of Bortex's pleadings, an entry of judgment against Bortex, and FOD's attorneys' fees assessed against Bortex and its counsel jointly and severally.  Bortex responded with correspondence dated June 19, 2013, urging that further discovery was needed in order for the Court to determine whether Bortex controlled the reexamination of the '022 patent, and continuing to assert that Bortex did not have an attorney-

client relationship with Wolf Greenfield regarding the reexamination.  (Doc. No. 80.)  Upon receipt of this correspondence, and in light of the discovery history detailed supra, we stayed all discovery in order to carefully consider whether case-dispositive sanctions were appropriate. (Doc. No. 79.)

On July 3, 2013, FOD filed a motion for protective order regarding two subpoenas that Bortex had served upon Central Garden & Pet Company, NEP's parent company, and the law firm of Wolf Greenfield, seeking document production and depositions.  (Doc. No. 82.)  A telephone conference was held on July 11, 2013, wherein counsel for Bortex represented that Bortex could not properly respond to the motion for sanctions until it conducted additional discovery on the reexamination issue. (July 11, 2013 T.C. Tr., p. 5.)  Counsel acknowledged that prior to the June 12, 2013 hearing, he had not travelled to his client's place of business in China in order to determine whether documents existed that would have been responsive to FOD's continuing discovery requests.  Counsel also advised that his co-counsel had recently travelled to China in order to search for this discoverable information, and that numerous discoverable documents not previously disclosed to FOD had been located, some of which had been presented to the Court by FOD and some which had not.  Counsel explained that his client had not turned over these documents due to a language barrier and misunderstandings.  (Id. at p. 16.)  Counsel for Bortex stated:

> Your Honor, what [my co-counsel] is doing now is what should have been done in April and unfortunately we didn't do it.  You know, we needed to go there ourselves to do it, Your Honor, and we apologize for not going over there and doing it.  And because we didn't do what we're doing now, we ended up in this hole, and we're sorry about that.  And what we're trying to do, Your Honor, is we're trying to fix it.  There's no excuse for why these documents were not produced earlier.  We should have gone there and we should have found them.

(Id.)

Regarding the outstanding subpoenas served by Bortex on Central Garden & Pet Company, NEP's parent company, and Wolf Greenfield, we ruled that "continued pursuit of the enforcement of these subpoenas would constitute a violation of the June 24, 2013 Order" staying discovery.  (Doc. No. 84, ¶ 7.)  Further, we noted that for several months, Bortex had an obligation, and indeed had been directly ordered more than once, to seek out this information, and it had failed to do so.  Finally, we determined that Bortex could continue to gather documents in its possession that it believed would support its opposition to the motion for sanctions, but that, in light of the existing record of discovery violations, deposing third parties at this late hour would not be helpful in determining whether case-dispositive sanctions were warranted.  (Id. at ¶¶ 8-9.)

In its response to FOD's motion for sanctions, Bortex included supplemental responses to FOD's discovery requests, as well as numerous emails that were unearthed after counsel finally travelled to China.  These emails largely discussed reimbursement for GKI's legal fees arising out of the NEP Colorado lawsuit as well as the reexamination of the '022 patent.  Many of these emails were written by Nash Rittman and included Sean Shao as a recipient.  (See, e.g., Resp. to Mot. for Sanctions, Stamoulis Decl., Doc. No. 87, Ex. 3) (email from Rittman on which Shao was copied, and which was translated into Chinese, informing Bortex of legal fees owed to GKI arising out of the Colorado litigation and reexamination).

Finally, FOD's reply in support of its sanctions motion included a declaration of a former Bortex employee, "Jack" Mou Zongjie, who worked as Bortex's executive general manager in 2011.  Zongjie attests that he was involved in the preparation and negotiation of several

indemnification agreements between Bortex and its customers, and that he took over Nash Rittman's responsibilities after Rittman left the company.  (Reply to Mot. for Sanctions, Zongjie Decl., ¶¶ 3-6, 8.)  Zongjie states that some of these indemnification negotiations were conducted alongside Sean Shao, and that Bortex and Shao retained original files of the indemnification agreements and other important documents.  Further, Zongjie indicates that the majority of those files, particularly emails and documents relating to the reexamination of the '022 patent and Colorado litigation, were stored by Shao in hardcopy, and not on the company's computer network.  (Id. at ¶¶ 5, 7, 15.)  Zongjie also states that Shao provided these hardcopies to him and directed him to scan them onto a portable hard disk drive, separate from the network, which remains in Bortex's possession.  (Id. at ¶¶ 16-19.)  Finally, Zongjie attests that he witnessed Wolf Greenfield communicating directly with Sean Shao via email and otherwise regarding the reexamination and the Colorado litigation, and that Bortex received files on these matters from Wolf Greenfield.  (Id. at ¶¶ 20-22.)

## II.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 37(b)(2)(A) provides that where a party or its agent fails to provide or permit discovery in violation of a court order, the court may sanction the party through any one of the following means:

(i)     Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   Striking pleadings in whole or in part;

(iv)   Staying further proceedings until the order is obeyed;

(v)    Dismissing the action or proceeding in whole or in part;

(vi)   Rendering a default judgment against the disobedient party; or

(vii)  Treating as contempt of court the failure to obey any order except an order

to submit to a physical or mental examination.

Id.  Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

The United States Court of Appeals for the Third Circuit requires that a district court contemplating imposing case-dispositive sanctions under Rule 37 must weigh the following factors:

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
> (3) a history of dilatoriness;
> (4) whether the conduct of the party or the attorney was willful or in bad faith;
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
> (6) the meritoriousness of the claim or defense.

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).[10]  "[D]ismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff."  Poulis, 747 F.2d at 866; see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) (noting that the sanction of

---

[10] The United States Court of Appeals for the Federal Circuit has held that when reviewing motions for sanctions brought under Rule 37, it applies the law of the circuit from which the case arose.  Monsanto Co. v. Ralph, 382 F.3d 1374, 1380 (Fed. Cir. 2004).

In its brief in support of the motion for sanctions, FOD analyzes the appropriateness of sanctions pursuant to a test laid out in Meyers v. Pennypack Woods Home Ownership Association, 559 F.2d 894, 904-05 (3d Cir. 1985).  As Bortex pointed out in its response to the motion for sanctions, Pennypack dealt with the potential preclusion of a witness not listed in a party's pre-trial memorandum, not case-dispositive sanctions.  However, many of the Pennypack factors include similar considerations to those found in Poulis.  Furthermore, FOD conducted an analysis under the Poulis factors in its reply brief.

18

dismissal is extreme, but that it may be appropriate in cases where parties act with flagrant bad faith and callous disregard).

### III.   ANALYSIS

#### A.   The Extent of the Party's Personal Responsibility

The first Poulis factor directs that we consider the extent to which the party itself is responsible for the misconduct.  Although the conduct of a party's counsel may be considered as a relevant factor in a Poulis analysis, in situations where an attorney is largely responsible for the misconduct, the Third Circuit has "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault."  Carter v. Albert Einstein Med. Ctr., 804 F.2d 805, 807 (3d Cir. 1986).

FOD argues that the record is replete with evidence of Bortex's, and specifically Sean Shao's, personal responsibility for the discovery violations at hand.  FOD urges that documents discovered through their own efforts reveal that Shao lied numerous times during his deposition about Bortex's involvement with NEP and the reexamination before the PTO.  Alternatively, FOD argues that even if Shao's false testimony was due to forgetfulness or ignorance, as a Rule 30(b)(6) deponent, he had a responsibility to prepare for the deposition to enable him to provide accurate answers.

Stated as plainly as possible, our review of Sean Shao's deposition and the documentary evidence of record, including emails from Bortex employees, reflects that Sean Shao committed perjury at his deposition.  Shao testified under oath that: (1) he had never heard of NEP; (2) Bortex never conducted business with NEP; (3) he was unaware of the '022 patent until the Seasons 4 litigation began in 2011; (4) he was unaware of the Colorado litigation; (5) Bortex had

never reimbursed either NEP or GKI for legal expenses; and (6) the indemnification agreement between Bortex and its customers only took effect if and when the customer was found to infringe FOD's patent.   As detailed above, all of these statements are directly refuted by the emails discovered by FOD.  Shao was copied on numerous emails discussing the reexamination, and thus he was clearly aware of the '022 patent.  He was also copied on and authored numerous emails discussing the attorney's fee arrangement between Bortex and NEP/GKI.  Even if, as Bortex suggests, Shao was unaware that NEP and GKI were related entities, he had an obligation to review such information prior to his Rule 30(b)(6) deposition.  See Miles v. Elliot, 2011 WL 857320, at *8 (E.D. Pa. Mar. 10, 2011).  Further, Bortex's unconvincing explanation does not explain why Shao would state that Bortex has never paid money to GKI or reimbursed GKI for any costs.  (See Shao Dep., p. 39.)

The declaration of "Jack" Mou Zongjie also supports a finding that Shao, and by extension, Bortex, is personally responsible for these discovery violations.  Zongjie's declaration indicates that Shao was significantly involved with the reexamination of the '022 patent, and that he placed information pertinent to the instant lawsuit on a removable hard drive, separate from Bortex's network.  This declaration is particularly compelling, because Bortex's counsel has repeatedly stated that he asked Shao and Bortex for documents responsive to FOD's discovery requests, and was repeatedly told that no such documents existed.  Zongjie's declaration is essentially unrebutted.  While Bortex has attempted to paint Shao's conduct as the result of ignorance or a breakdown in communication, the evidence of record reflects that Bortex has purposefully thwarted this Court's discovery Orders.  We therefore find that the first Poulis factor weighs heavily in favor of dismissal.

**B.** **The Prejudice to the Adversary Caused by the Failure to Meet Scheduling Orders and Respond to Discovery**

The Third Circuit has given the following examples of prejudice to the opposing party: "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party. Prejudice also includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal citations and quotation marks omitted). The prejudice to the adverse party need not be so extreme that it could not be repaired by further discovery and delay of trial. Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 694 (3d Cir. 1988). Courts may also consider "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy[.]" Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).

FOD asserts that it has been significantly prejudiced by Bortex's misconduct because it has incurred significant costs and faced continuous delays in obtaining expedited relief for the alleged infringement of its patent. This prejudice includes the costs associated with: Sean Shao's Rule 30(b)(6) deposition; preparing for the preliminary injunction hearing scheduled for June 12, 2013, which has now been postponed indefinitely; three hearings the Court held in order to deal with the parties' discovery disputes; and numerous telephone calls and letters to the Court addressing Bortex's failure to provide discovery. Bortex responds that FOD has not been prejudiced because there is no current scheduling order in effect, discovery has not been completed, and "FOD's motion for sanctions rises and falls on the issue of estoppel as it relates to the '022 patent." (Resp. to Mot. for Sanctions, p. 6.)

We find that FOD has been significantly prejudiced by Bortex's refusal to comply with discovery orders issued by the Court.  A hearing on FOD's motion for preliminary injunction was initially scheduled for April 4, 2013.  This hearing date was postponed to June 12, 2013 due to Bortex's failure to provide appropriate answers to FOD's interrogatories and requests for production.  The Court was required to schedule hearings for March 5, 2013 and April 4, 2013, as well as numerous telephone conferences to address continuing discovery issues.   FOD also incurred costs in locating the discovery that should have been provided by Bortex and in filing a motion for sanctions.

While Bortex attempts to shift the focus to FOD, arguing that FOD could have obtained access to the discovery at issue from NEP at any time during the litigation, FOD's conduct is not before us.  The motion at hand requires us to examine Bortex's conduct throughout discovery, and it is important to note that at no time has Bortex denied that it was obligated to turn over the information in question to FOD.

 Finally, what seems to have gotten lost in the unending discovery squabbles is that FOD has come to this Court seeking immediate injunctive relief, believing its patent has been, and continues to be, infringed.  Bortex's discovery violations have taken this Court's focus far away from addressing that issue.  The significant costs and delays caused by Bortex's misconduct has certainly prejudiced FOD from obtaining its day in court, which includes its right to have discoverable material.

While it is possible that additional discovery and further postponement could alleviate some of the prejudice to FOD, that is not the standard prescribed by the Third Circuit.  Bortex's assurances that it is now ready, on its own timetable, to comply with its discovery obligations,

after blatantly violating numerous discovery orders, is unavailing.  Bortex has willingly made representations that are clearly inaccurate, including counsel's repeated assurances that Bortex did not have any documents relating to the reexamination, and Sean Shao's false deposition testimony regarding the reexamination.  These facts, coupled with Zongjie's declaration that Shao has taken steps to keep evidence that may be adverse to Bortex off of the company's computer network, creates uncertainty as to whether the whole truth will ever be known about whether Bortex was a real party in interest in the reexamination or whether any of Bortex's allegations of patent invalidity due to improper inventorship or the on-sale bar have merit.  See Monsanto Co. v. Ralph, 382 F.3d 1374, 1382 (Fed. Cir. 2004) (finding that the defendant's consistent lies and failure to turn over discovery as to one claim warranted striking his entire pleadings because there was no confidence that the truth could ever be determined by the court). Therefore, we find that the second factor also weighs in favor of case-dispositive sanctions.

### C.  A History of Dilatoriness

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as constant non-response to interrogatories, or consistent tardiness in complying with court orders." Adams, 29 F.3d at 875 (citing Poulis, 747 F.2d at 868).  These problematic acts must be evaluated based on the history of the case as a whole.  Id. at 876.

Bortex has caused significant delays, requiring the Court to micromanage the discovery process, and ultimately resulting in a delay of more than six months in the preliminary injunction hearing.  Three discovery orders have been violated by Bortex: (1) the January 14, 2013 Order laying out an expedited discovery schedule and directing the parties to supplement their written discovery responses; (2) the March 7, 2013 Order directing Bortex to "provide FOD with . . .

documents responsive to FOD's requests for production;" and (3) the June 3, 2013 Order requiring Bortex to "provide FOD with any and all documents in its possession, custody or control relating to NEP's reexamination of the '022 patent, as well as any documents that reference or discuss indemnification or payment made to NEP related to the reexamination." Bortex continually offered assurances that it has complied or would comply with its discovery obligations, but repeatedly failed to do so, even in the face of the Court's warnings that sanctions would be imposed.  This conduct has led to significant delays.  Therefore, we find that Bortex has engaged in a history of dilatoriness that weighs in favor of case-dispositive sanctions.

### D.  <u>Whether the Conduct of the Party or the Attorney was Willful or in Bad Faith</u>

In assessing whether a party's conduct was willful, courts often look for evidence of intentional or self-serving behavior that indicates flagrant bad faith.  <u>Adams</u>, 29 F.3d at 875.  A party's mere negligence is generally not sufficient to warrant dismissal.  <u>Id.</u>

Bortex asserts that it has "continually attempted to respond to FOD's outstanding discovery and comply with the Court's Orders" and that the failure to produce responsive documents was due to a language barrier and thus was "inadvertent and merely negligent." Bortex points to its attempts to subpoena Central Garden and Wolf Greenfield as evidence of its good faith attempts to provide discovery to FOD.  (Resp. to Mot. for Sanctions, pp. 10-11.)

In assessing "bad faith," it is important to keep in mind that evidence of Bortex's participation in the reexamination of the '022 patent could have a significant impact on the ultimate outcome of this case.  If Bortex were found to have participated in the reexamination process, and thus to be a real party in interest, Bortex would be estopped from asserting any claims that had been raised, or could have been raised, before the PTO during the reexamination.

See 35 U.S.C. § 315(c).  Thus, much of the discovery wrongfully withheld by Bortex pertained to a critical issue in the resolution of this case, as opposed to secondary or general information.

While we have attempted to provide Bortex's counsel with the benefit of the doubt, and do not conclude that he willfully withheld discoverable materials, we cannot ignore the fact that counsel continually failed to work with his client to ensure that responsive documents had been searched for, located and produced.

On the other hand, Sean Shao lied during his deposition about an issue central to this case, claiming to have no knowledge of the reexamination or any payments made relating to the reexamination.  Shao stated he had no knowledge of the '022 patent until 2011, three years after NEP filed the request for the inter partes reexamination.  Not only was Shao copied on numerous emails discussing the reexamination as that process was unfolding, he also authored emails on that very topic.  Emails and bills from Wolf Greenfield indicate that he was, at the very least, frequently apprised of the proceedings before the PTO well before 2011.  (See Mot. for Sanctions, Ex. 6.)  The language-barrier argument is not convincing, as a number of the emails were written in Chinese, Shao's native tongue.  (See Resp. to Mot. for Sanctions, Exs. 3-5.)

Bortex further stresses that its discovery violations should be excused because FOD has known about Bortex's legal-fee reimbursement agreement with GKI from the start of litigation.  Whether this is true or not misses the point—information on the reexamination was properly requested, ordered to be turned over, and willfully withheld.  Moreover, this argument is directly contradicted by Shao's deposition, wherein he denied that anyone had ever requested indemnity from Bortex, and where he stated that Bortex had not paid for any of its customers' litigation against FOD.  (Shao Dep., p. 35.)  Indeed, in its responses to FOD's requests for admission,

Bortex denied that it "indemnified, reimbursed, or otherwise paid some or all of the attorneys' fees and costs incurred by [NEP]" in either the lawsuit between FOD and NEP or the reexamination proceedings.  (Mot. for Sanctions, Ex. 2, ¶¶ 9, 8 (second occurrence).)  The unrefuted Zongjie Declaration only serves to magnify Bortex's bad faith conduct.

The culmination of the evidence set forth above indicates that Bortex's conduct has been willful and contumacious.  We conclude that Bortex, aware of the significant implications of being found to be a real party in interest to the reexamination of the '022 patent, has attempted to thwart its discovery obligations, despite being given numerous opportunities to remedy its deficient responses.  Bortex did so despite numerous warnings from the Court that sanctions would be imposed.  We therefore find that the willfulness factor weighs in favor of case-dispositive sanctions.

### E.   The Effectiveness of Sanctions Other than Dismissal

Poulis requires that a district court must consider whether sanctions other than dismissal would be effective.  Id., 747 F.2d at 869.   "The Third Circuit has identified a number of alternative sanctions available to a court, including 'a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees . . . [or] the preclusion of claims or defenses. . . .'"  Smith ex rel. El Ali v. Altegra Credit Co., 2004 WL 2399773, at *7 (E.D. Pa. Sept. 22, 2004) (quoting Titus v. Mercedes Benz of N. Am., 695 F.2d 746, 759 n.6 (3d Cir. 1982)).  "Dismissal must be a sanction of last, not first, resort," and a court should assure itself that no other sanction would "serve the ends of justice."  Poulis, 747 F.2d at 869; Titus, 695 F.2d at 749-51.

As previously stated, Bortex is a Chinese company without any known assets in the United States.[11]   Due to the likely inability to enforce any monetary sanctions imposed on Bortex, we find that such a sanction would not sufficiently address the misconduct in this case. While Bortex's counsel's conduct greatly contributed to the discovery violations at issue, sanctioning counsel would take the focus off of the bad faith exhibited by Bortex and Sean Shao.

As for "placing the case at the bottom of the calendar," FOD has already been significantly disadvantaged by having the hearing on its motion for expedited injunctive relief repeatedly postponed.   FOD is, after all, the patent holder, and delaying this matter any further would only benefit Bortex and prejudice FOD.   Having carefully considered all possible sanctions, we conclude that no sanction other than a case-dispositive sanction would remedy the prejudice to FOD and the harm to the efficient administration of justice.

## F.  The Meritoriousness of the Claim or Defense

When assessing the meritoriousness of a claim under Poulis, courts generally apply the standard used for a 12(b)(6) motion to dismiss.   Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008).   A claim will be determined to be meritorious if the allegations in the pleadings would "support recovery by plaintiff or would constitute a complete defense" if presented at trial. Poulis, 747 F.2d at 869-70.

Bortex's complaint seeks a declaratory judgment that FOD's '022 and '852 patents for jacketed LED light strings are invalid and unenforceable, and that Bortex's products do not

---

[11] Bortex has denied FOD's request for admission that it does not have any assets in the United States.   (Sub. Mot. for Prelim. Inj., Berenato Decl., Ex. 2, ¶¶ 2-4; Doc. No. 61-1, p. 6.)   The only assets in the United States that appear to be of record is $100,000 to $150,000 worth of Bortex light strings.   (Shao Dep., Resp. to Sub. Mot. for Prelim. Inj., Ex. B, pp. 17-18.)   FOD asserts that these "assets" are infringing products, and thus have no value.

infringe these patents.  Bortex raises several theories as to why these patents are invalid and unenforceable, including anticipation, obviousness, on-sale bar and incorrect inventorship.  The complaint asserts facts to plausibly support Bortex's allegations, including the fact that Sean Shao claims to have first developed the injection-molded LED light string but was not listed as an inventor on the applications for the '022 and '852 patents; that David Allen was knowingly and incorrectly named as an inventor on the '022 patent; and that prior art anticipates various claims.  (Compl. ¶¶ 16-26, 35-44, 63-73.)  Looking at the facts alleged in the complaint in the light most favorable to Bortex, we find that it has stated a claim that could be found to be meritorious.  Therefore, this factor weighs against case-dispositive sanctions.

### G.  Weighing of the Factors

Poulis provides that the factors should be balanced, with no one factor being dispositive. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992).  Based on the above analysis, five of the six Poulis factors weigh in favor of case-dispositive sanctions.[12]  We are particularly persuaded by the bad faith conduct on the part of Sean Shao and Bortex, which demonstrates that the party itself is responsible for much of the misconduct that has occurred over the past several months. Based upon our findings, we can reach no other conclusion but that the motions for sanctions should be granted, Bortex's pleadings stricken from the record and judgment entered in favor of FOD.

---

[12] While we find that the "meritoriousness of the claim or defense" factor falls in favor of Bortex, we note that its weight is significantly diminished due to our finding that the record currently indicates that Bortex was a real party in interest to the reexamination of the '022 patent.  We are also cognizant of the fact that Bortex's expert witness, Dr. Corneliussen, acknowledged that if the '022 patent is valid, Bortex's accused products infringe claim 69 of the patent.  As a result of these findings, the estoppel principles laid out in 35 U.S.C. § 315(c) significantly weaken the allegations made in Bortex's complaint.

**IV.**     **CONCLUSION**

A careful review of the record has revealed that Bortex has engaged in willful discovery violations throughout this litigation, despite the repeated threat of sanctions, which has caused significant prejudice to FOD.  We find that the <u>Poulis</u> factors weigh heavily in favor of striking Bortex's pleadings, and we will accordingly enter judgment in favor of FOD.

With regard to expenses and attorneys' fees, we recognize that Federal Rule of Civil Procedure 37(b)(2)(C) generally requires courts to impose these costs against the disobedient party and/or the attorney advising that party.  However, we find that imposing any costs against Bortex and its counsel, beyond those associated with bringing the motion for sanctions, would be unjust.  As previously discussed, the Court is unaware of any Bortex assets in the United States, other than $100,000 of Bortex light strings.  Therefore, if the attorneys' fees sanction needs to be enforced, Bortex's counsel, who we have not found to have engaged in willful misconduct, would likely be required to pay.  Moreover, FOD has now won its case without the expense of continuing with the hearing on the motion for preliminary injunction, any further motions practice, or a final trial on the merits.  Therefore, we decline to impose any monetary sanction against Bortex or its counsel, other than the cost of bringing the motion for sanctions.

Our Order follows.